### G. C. McGREGOR V. JOHN SIMA.

#### No. 979.

**1. Pleading—Plea of Not Guilty Waived by Special Defenses.**

In an action by a vendor to recover the land sold because of non-payment of ·the purchase money therefor, the defendant, by setting up special defenses, waives ·his plea of not guilty.

**2.  Same—Different Estoppels.**

Where, in such action, the defendant pleads an estoppel because of the silence of plaintiff's agent as to the existence of plaintiff's purchase money note at the time a purchaser through whom defendant claims bought the land, defendant can not show an estoppel arising out of the agent's statement to another purchaser that the purchase money note had been paid.

**3.  Directing Verdict on Controverted Issue.**

It was error for the court to direct a verdict for the defendant on the ground that plaintiff was estopped by certain statements made by his agent, where the agent had testified that at the time of the statements he had ceased to act as plaintiff's agent.

**4.  Estoppel—Mistake Without Injury.**

Statements made under mistake and by which the opposite party is not induced to change his position for the worse, will not constitute an estoppel.

APPEAL from Fayette.  Tried below before Hon. H. TEICHMULLER.

*Moore & Duncan*, for appellant.—1.  Where in trespass to try title, defendant pleads the general issue and also pleads other special defenses, such as estoppel, he waives his plea of not guilty, and is confined and limited to such special pleas, and to such estoppel as he specially pleads. Shields v. Hunt, 45 Texas, 426; McSween v. Yetl, 60 Texas, 184; Rivers v. Foot, 11 Texas, 218; Custard v. Musgrove, 47 Texas, 218.

2.  The declarations of an agent are only admissible as to matters within the scope of his authority; and only as to transactions then going on, and not as to past events.  Railway v. Ragsdale, 2 S. W. Rep., 517; 67 Texas, 24; 2 Whart. Ev., 326, 327.

*Brown, Lane & Jackson*, for appellee.—The court below did not err in charging the jury to find for defendant, because the uncontradicted evidence in support of defendant's pleadings shows that plaintiff was estopped from recovering anything in this cause.  Love v. Barber, 17 Texas, 317; Mayer v. Ramsey, 46 Texas, 375.

GARRETT, CHIEF JUSTICE.—On December 15, 1881, the appellant, by his agent, sold to one Thomas Lay a tract of seventy acres of land situated in Lavaca County for a consideration of $100 in cash, and $800 on a credit, as evidenced by four promissory notes of said Lay, payable to the order of E. H. Fordtran as the agent of G. C. McGregor, of that date, for the sum of $200 each, due on the 1st day of December, 1882, 1883, 1884 and 1885, respectively, and executed to him a deed which expressly reserved the vendor's lien for the payment of said notes. Through mesne conveyances from the said Thomas Lay, the appellee became the purchaser of the land.  This suit was instituted by the appellant for the recovery of the land on November 26, 1890, in the District Court of Lavaca County, and the venue was afterwards changed to the county of Fayette.  The appellant set out in his petition the fact and terms of the sale of the land, and the execution of a deed with reservation of the vendor's lien, and the subsequent conveyances thereof down to the appellee, alleged that a large sum of the purchase money due him by Lay was unpaid, that the superior title remained in him, and prayed judgment that the land be restored to him, unless the ap-

pellee should promptly pay the purchase money remaining due thereon.

The appellee demurred to the petition, pleaded the general denial and not guilty, the statute of limitations, and specially, at length, the several conveyances, but in estoppel facts to show that the said E. H. Fordtran, as the agent of appellee, had with full knowledge of the facts permitted one Okroulic to purchase the land from said Lay and pay full value therefor and gave no notice that his principal had a lien.

The facts developed upon the trial of the case below show that on June 27, 1883, Thomas Lay sold the land to Vincent Okroulic for the sum of $1260, of which $60 was paid in cash and notes were taken for the deferred payments as follows: Dec. 1, 1883, $500; Dec. 1, 1884, and Dec. 1, 1885, $230 each; and on Dec. 1, 1886, $240. Okroulic conveyed the land to Anna Knesek, as the survivor of the community estate of E. Knesek, her deceased husband, and herself. The consideration as shown by the agreement of counsel for this conveyance was $1900 cash, and balance in notes amounting to $1480; but the evidence showed that E. Knesek in his life time had become the holder of the three last unpaid notes of Okroulic to Lay, and that the sale was effected in settlement of these notes, which formed a part of the cash consideration for the conveyance. In a partition of the community estate of Anna Knesek and her deceased husband, the land was set apart to a daughter, Julia Knesek, who afterwards married one John Knesek. On August 8, 1888, Julia and her husband John Knesek conveyed the land to the appellee, John Sima. Anna Knesek married the appellee.

It was shown that there was a considerable balance on Thomas Lay's purchase money notes; all of the last note, except two years' interest, remained unpaid. Thomas Lay collected the Okroulic note for $500 and made a payment on his notes. He sold the remaining notes of Okroulic to E. Knesek and arranged with him to discharge his notes to Fordtran as agent for McGregor. Knesek agreed to do this, and so notified Fordtran by letter. Knesek purchased the Okroulic notes after getting a statement from Fordtran of the balance due McGregor.

Anna Sima was allowed by the court to testify, over the objection of the appellant that the appellee's plea of not guilty had been waived by his special pleas and that there was no allegation in the answer to support the evidence; that in December, 1886, before she had concluded the trade with Okroulic, she saw Fordtran and asked him if anything was due and unpaid on any of Thomas Lay's notes to him as agent of McGregor, and he replied that they had all been paid off and dicharged; that she asked the question in order to know if she would get a good title to the land, and when he told her that there was nothing due on the notes, she afterwards accepted the deed and paid Okroulic the money. The witness probably meant December, 1885. Fordtran was a resident of Galveston, and was not present at the trial, but testified by deposition. He was residing at Flatonia, in Fayette County. He testified that in the month of October, 1883, he removed to Galveston, and gave up McGregor's business. There was other evidence, however, showing that

he received money on the notes after he removed to Galveston. After the evidence had been heard, the court informed counsel that they would not be permitted to discuss the evidence, and instructed the jury to return a verdict for the defendant, which was done.

The instruction was:

"You are instructed, that the uncontradicted and undisputed testimony being to the effect that Mrs. Sima, while negotiating the purchase of the land in question, and before the purchase money was paid, inquired of Fordtran, the agent of McGregor, as to any claim attaching to the land, and that said Fordtran replied that he or McGregor had no lien or claim, and that they might purchase the land with safety,—the plaintiff is now estopped from asserting any lien as against this defendant by reason of this undisputed evidence. You are instructed to return a verdict in favor of the defendant."

Appellant moved for a new trial upon the ground, among others, that he was surprised by the testimony of Anna Sima as to the statement of E. H. Fordtran; that he expected to show by Fordtran that no such statement was made and accounted for his inability to produce the affidavit of Fordtran denying such statement by his absence from Galveston, and attached to his motion the affidavit of Anna Machalec in whose presence Anna Sima said the statement had been made, that she had never heard any conversation between E. H. Fordtran and Anna Sima about the payment of said notes.

Appellee must be confined in the production of his testimony to the special defenses set up in his answer, which were limitation against the notes, payment of the notes, and an estoppel by reason of the knowledge and silence of Fordtran when Okroulic purchased the land from Lay. By his special answer, his plea of not guilty was waived, and there was no allegation in the answer under which the evidence of Anna Sima was admissible for the purpose of showing an estoppel.

It was also error to instruct a verdict for the appellee. Fordtran testified that when he left Flatonia, in October, 1883, he gave up McGregor's business, and notwithstanding he had further correspondence about the notes, still it cannot be said that the agency of Fordtran was shown to exist at the time the statement was said to have been made by the undisputed facts. There was such a conflict of testimony as would require the issue to be submitted to a jury, if it be conceded that the testimony, taken with the other facts in the case, would show an estoppel upon the appellant to show that the notes had not been paid.

However, as the case must go back for another trial, we think it proper to express the opinion that if Anna Sima's testimony stood, no estoppel was shown. When Edward Knesek bought the Okroulic notes from Lay, he assumed payment of Lay's notes to the appellant, and the amount due thereon was deducted from the amount to be paid for the notes, and Knesek advised Fordtran that he had promised to pay the Lay notes due McGregor. So Knesek received from Lay and held the money sufficient to pay Lay's notes and agreed to do so. He died without having

done so, and the community estate in the hands of his surviving wife,. Anna, became liable to pay the money for Lay. But it has never been paid, although Knesek's estate got the benefit thereof when the administratrix took the land from Okroulic. Knesek only paid for the Okroulic notes the difference between them and Lay's notes to McGregor which he assumed. When the community administratrix bought the land in settlement of the Okroulic notes, she got full credit therefor, and they were wholly discharged. The statement, then, of Fordtran to Anna Sima, would, if not true, amount to no more than a mistake as to the payment .of a debt which she, as the representative of the estate of herself and her deceased husband, owed. She was not induced thereby to change her position to her injury, for she still owed the debt which, if she were to pay, would discharge the lien. Her taking the land believing it was discharged of the lein of the Lay notes, did not relieve her of her obligation to pay them.

For the errors committed by the court, as above shown, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 9, 1896.